UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STACIE L. NICHOLSON | : | |
| | : | |
| v. | : | C.A. No. 07-336A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Social Security ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on September 4, 2007 seeking to reverse the decision of the Commissioner. On March 21, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 6). On April 25, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 7).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for

an Order Affirming the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 6) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on September 5, 2003, alleging disability as of June 14, 2003. (Tr. 77-79).[1] Plaintiff was insured for DIB through September 30, 2006. (Tr. 15). The application was denied initially (Tr. 71) and on reconsideration. (Tr. 70). Plaintiff filed a request for an administrative hearing. (Tr. 76). An initial hearing was held on May 4, 2006, and a supplemental hearing was held on August 24, 2006 before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert appeared and testified. (Tr. 33-69).

On November 21, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 10-23). Plaintiff appealed to the Appeals Council by filing a request for review on November 29, 2006. (Tr. 7-9). The Appeals Council denied Plaintiff's request for review on June 29, 2007. (Tr. 4-6). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff contends that the ALJ erred by determining that her alleged cognitive impairments did not meet Listing 12.05 (mental retardation) or, at a minimum, did not impose more than a minimal impairment in her ability to engage in basic work-related activities. The Commissioner disputes Plaintiff's claims and asserts that the totality of the evidence of record supports the ALJ's failure to find the existence of a disabling cognitive impairment.

---

[1] Plaintiff's SSI application is not included in the record but is referenced in the ALJ's decision. (Tr. 13).

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was twenty-nine years old at the time of the ALJ hearing, has a high school education (Tr. 91) and previous work experience as a cashier, home companion and teacher's assistant. (Tr. 65-87). Plaintiff alleged disability due to anxiety attacks, depression, a heart murmur, bulimia and migraines. (Tr. 86). Plaintiff also alleges difficulty sleeping, excessive worrying, anxiety attacks when out of the house, becoming stressed easily and problems with her memory. (Tr. 81-82).

Sol Pittenger, Psy.D., examined Plaintiff on October 1, 2003 for the benefit of State Disability Determination Services. Plaintiff reported panic attacks, depression and a pattern of self-induced vomiting. (Tr. 125). Plaintiff lived with her two children. (Tr. 126). She performed self-care activities and maintained her home (cleaning and laundry). Id. Plaintiff also completed paperwork and drove. Id. She reported a general practice of avoidance of others, except for two friends. Id. Plaintiff also reported that she had poor concentration in reading. Id. She graduated from high school, but indicated that she received special education and repeated one grade. Id. Dr. Pittenger estimated that Plaintiff's intelligence was in the low-average range. (Tr. 127). His diagnoses were bulimia, major depressive disorder (mild) and panic disorder. Id.

Michael Slavit, Ph.D., reviewed Plaintiff's medical files. Dr. Slavit issued an assessment of Plaintiff's mental functioning on November 6, 2003, (Tr. 134), and found that Plaintiff had mild restrictions of daily living. (Tr. 144). He also opined that she had moderate difficulties in maintaining social functioning and moderate limitations in maintaining pace, persistence and concentration. Id. Dr. Slavit also found that Plaintiff had one or two episodes of decompensation. Id. Dr. Slavit noted moderate limits on Plaintiff's ability to remember and carry out detailed instructions and to maintain attention and concentration for extended periods. (Tr. 148). He also found that she was moderately limited in interacting with the general public or accepting criticism from supervisors. (Tr. 149). Dr. Slavit felt that Plaintiff could understand and remember three-step instructions. (Tr. 150). He continued that the evidence indicated that Plaintiff would be limited to tasks that are not complex and not time-pressured. Id. She could perform routine work for two-hour periods in an eight-hour workday. Id. Plaintiff was poorly suited to work on a team project or for sustained work with the public. Id. She could sustain adequate superficial relationships with

supervisors and coworkers. Id. Dr. Slavit concluded that Plaintiff could make routine work-related decisions independently. Id.

Plaintiff was admitted into the Providence Center for treatment of post traumatic stress disorder, bulimia and panic attacks. (Tr. 212). Plaintiff underwent counseling at the Providence Center. (Tr. 215-241). On September 16, 2004, Dr. Adrian Webb examined Plaintiff and reported a history of bulimia and panic attacks. (Tr. 242). Dr. Webb noted that Plaintiff appeared much younger than her stated age. Id. Her speech was logical and goal directed. Id. She had no formal thought disorder. Id. He did observe decreased concentration and consequent memory impairment. (Tr. 242-243). Dr. Webb's diagnoses were rule out anorexia and rule out bulimia. (Tr. 243). Plaintiff was discharged from the Providence Center on September 22, 2004. (Tr. 207).

Dr. Ghirwa Hassen, Plaintiff's treating physician, completed an emotional impairment questionnaire on February 1, 2005. (Tr. 274). Dr. Hassen indicated that Plaintiff had an emotional impairment significantly limiting her ability to engage in substantial activity on a full-time basis. Id. Dr. Hassen stated that Plaintiff had an eating disorder and depression. Id. Dr. Hassen cautioned that Plaintiff was not compliant with treatment. Id. Her symptoms included weakness and a sad mood. Id.

Dr. James Sullivan performed a psychiatric evaluation of Plaintiff on June 5, 2004. (Tr. 278). Dr. Sullivan summarized that Plaintiff met the criteria for major depressive disorder, generalized anxiety disorder and panic disorder. Id. He observed Plaintiff to appear older than her stated age. (Tr. 281). Plaintiff reported feelings of low self esteem, poor sleep and diminished appetite. (Tr. 278-279). He noted that Plaintiff was able to tend to basic household needs and parental responsibilities to the exclusion of all other social activities. (Tr. 281). He assessed her

with major depressive disorder, generalized anxiety disorder, panic disorder, bulimia and the need to rule out post traumatic stress disorder. Id. Dr. Sullivan concluded that Plaintiff was disabled with a psychiatric condition. (Tr. 282).

John Parsons, Ph.D., examined Plaintiff on August 9, 2006, at the request of her attorney. (Tr. 352). Dr. Parsons reported that Plaintiff attained a Verbal IQ score of 71, a Performance IQ score of 73, and a Full Scale IQ score of 69. (Tr. 356). Dr. Parsons explained that the Verbal and Performance scores were within the lowest limits of the borderline range and the full scale score was in the upper limits of mild mental retardation. Id. Plaintiff described moderate to serious problems with depression. Id. Her thought process was slow and concrete. (Tr. 358). Dr. Parsons described impaired attention and concentration. Id. He felt that Plaintiff was globally functioning within the upper limits of the mild range of mental retardation. Id. Dr. Parsons diagnosed Plaintiff with post traumatic stress disorder, major depressive disorder, social phobia, bulima and panic disorder. Id. He also found her to have "mild mental retardation" on Axis II. (Tr. 359). He concluded that maintaining gainful employment on a sustained basis was not a "viable option" for Plaintiff. Id.

**A. The ALJ Did Not Err in Evaluating Plaintiff's Cognitive Functioning**

The ALJ generally decided this case adverse to Plaintiff at Step 5. The ALJ, however, disposed of Plaintiff's claim of cognitive impairment at Step 2. Plaintiff only challenges the ALJ's evaluation of her cognitive impairment. In particular, the ALJ's conclusion that Plaintiff's "cognitive impairment ha[s] not imposed more than minimal impairment of her ability to engage in basic work related activities and are found to have been non-severe" as defined in 20 C.F.R. §§ 404.1521 and 416.921. (Tr. 15-16).

Plaintiff contends that the evidence should have resulted in a Step 2 finding that her cognitive impairment is a "severe" impairment and an additional Step 3 finding that the impairment meets or medically equals in severity the criteria for Listing 12.05 (mental retardation). Plaintiff relies primarily on the consultative opinion of Dr. Parsons. Dr. Parsons evaluated Plaintiff upon the request of her attorney on August 9, 2006, shortly before the second ALJ hearing. Based on his mental status examination and testing, Dr. Parsons diagnosed "mild mental retardation." (Tr. 359). As is his prerogative, the ALJ compared Dr. Parsons' opinion to the other medical and functional evidence of record. The ALJ concluded that "the record fails to establish or document this as an impairment that...has imposed more than minimal impairment of [Plaintiff's] ability to engage in basic work related activities" and that Dr. Parsons' "conclusion is inconsistent with virtually all of the rest of the record." (Tr. 16). The ALJ's conclusions are supported by the record and thus are entitled to deference.

The issue presented is whether the ALJ was required to accept Dr. Parsons' opinion of mild mental retardation since the record did not include any other IQ scores, or if he could evaluate the consistency of such scores with other medical evidence and evidence of Plaintiff's actual functioning. In Nieves v. Sec'y of Health and Human Servs., 775 F2d 12, 14 (1st Cir. 1985), the First Circuit held that an ALJ was "at liberty" to discredit IQ scores where such evidence was the only medical evidence before the ALJ on this point. However, the First Circuit later clarified that the Commissioner "does not have to accept IQ scores as conclusive if there is substantial evidence of record from which to infer their unreliability." Soto v. Sec'y of Health and Human Servs., 795 F.2d 219, 221 (1st Cir. 1986); see also Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (IQ "test results must be examined to assure consistency with daily activities and behavior.").

The ALJ gave several reasons for discrediting the IQ scores reported by Dr. Parsons. For instance, Dr. Parsons was the only practitioner (treating or consulting) who diagnosed mental retardation. Dr. Slavit did not find any indication of mental retardation (Tr. 134, 138) but found evidence of bulimia nervosa (Tr. 135) and depression (Tr. 137). Dr. Webb found no "formal thought disorder" and made no mention of the existence of mental retardation. (Tr. 242-243). Finally, neither Dr. Hassen nor Dr. Sullivan diagnosed mental retardation. (Tr. 274, 281). Thus, the ALJ accurately noted that Dr. Parsons' diagnosis is "inconsistent with virtually all of the rest of the record." (Tr. 16).

The ALJ also exercised his discretion to evaluate the consistency between Dr. Parsons' diagnosis and Plaintiff's daily activities and work history. See Clark v. Apfel, 141 F.3d 1253, 1255-1256 (8th Cir. 1998) (ALJ properly rejected IQ scores assessed by a non-treating consulting psychologist which were inconsistent with claimant's daily functional abilities and prior medical record.). The ALJ accurately noted that Plaintiff was a high school graduate and attained a CNA course certificate. (Tr. 16). The ALJ also outlined Plaintiff's work history, parental responsibility for two young children and household management as a single parent. Id. Despite her claimed mental retardation, Plaintiff previously worked as a cashier, a Certified Nursing Assistant for a home care agency and as a teacher's assistant in a pre-school. (Tr. 65, 87). The VE described all of these positions as "semi-skilled." (Tr. 64-65). Finally, the ALJ indicated that Plaintiff "was observed at the hearing to present herself as of average intelligence as she was expressive, had an adequate vocabulary and was appropriate in all ways." (Tr. 16); see also Ex. 4F (Dr. Pittenger on mental status exam opined that Plaintiff's "intelligence appears Low-Average.").

The record contains no medical or functional evidence that Plaintiff was diagnosed as, or even suspected of being, mildly mentally retarded prior to her visit with Dr. Parsons. Further, although the ALJ did not find a severe cognitive impairment, he found Plaintiff's other mental impairments to be severe and assessed moderate non-exertional limitations regarding attention and concentration. (Tr. 20). Despite these moderate limitations, Plaintiff was found not disabled at Step 5. Since the ALJ's decision to discredit the IQ test results reported by Dr. Parsons is supported by substantial evidence on the record as a whole, it is entitled to deference. Plaintiff has shown no reversible error by the ALJ.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 6) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 19, 2008